# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

EDWARD JUNOD,

                                        Plaintiff,

            v.                                          5:18-CV-1424
                                                        (DNH/ATB)
CPS of ONONDAGA COUNTY, et al.,

                                        Defendants.

EDWARD JUNOD, Plaintiff pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Edward Junod, together with an application to proceed in forma pauperis ("IFP") and a motion for appointment of counsel. (Dkt. Nos. 1-3).

## I.    IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint

2

under the above standards, keeping in mind that pro se pleadings are interpreted to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

## II.   Facts

Plaintiff has named seven defendants in this action: (1) the Child Protective Service ("CPS") of Onondaga County; (2) Angela Bareford, the mother of plaintiff's child; (3) the Clerk of Onondaga County; (4) David Ellspermann, the Clerk of Marion County Florida; (5) the Pasco County Florida Clerk of Court; (6) the Florida Department of Revenue; and (7) the "Child Support Enforcement Act of USA." Plaintiff has completed a different form-complaint for each defendant and has attached them to each other to form one complaint for filing.[1] (Complaint ("Compl.") (Dkt. No. 1).

Even though plaintiff has used form complaints, he has not completed all of the questions on any of them, and he has written short phrases (not complete sentences),

---

[1] The "complaints" are written on the following forms: (1) CPS of Onondaga County is sued using a form for 42 U.S.C. § 1983 civil rights actions (Compl. at CM/ECF pp.104); (2) Angela Bareford is sued using a section 1983 form (Compl. at CM/ECF pp.5-8; (3) the Onondaga County Clerk is sued using a form for *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) cases (Compl. at CM/ECF pp.9-12; (4) the Clerk of Marion County Florida (David Ellspermann) is sued using a form for the Americans with Disabilities Act cases, 42 U.S.C. § 12101 et seq. (Compl. at CM/ECF pp.13-16); (5) the Clerk of Pasco County Florida is being sued using a form for Age Discrimination cases, 29 U.S.C. § 626(c)(1) (Compl. at CM/ECF pp.17-20); (6) the Florida Department of Revenue is sued using a form for Title VII cases, 42 U.S.C. § 20005-5 (Compl. at CM/ECF pp.21-26); and (7) the Child Support Enforcement Act is being sued using a section 1983 form (Compl. at CM/ECF pp. 27-29).  The rest of plaintiff's 93-page complaint consists of exhibits, including copies of plaintiff's previous actions in both federal and state court which relate to the issues that he raises in this complaint.

attempting to explain the conduct of each defendant.  Essentially, plaintiff complains about the defendants' actions towards him regarding the custody and support of his minor child.  On a form used for 42 U.S.C. § 1983 cases, plaintiff claims that the Onondaga County CPS "Supervisor" accused him of kidnaping and not having his child enrolled in school. (Compl. at CM/ECF p.2).  There are no causes of action listed,[2] and plaintiff's prayer for relief is "Justice freedom Rights." (Compl. at CM/ECF at 4).

On another section 1983 form, plaintiff alleges that the mother of his child accused plaintiff of kidnaping the child from "a womens [sic] Doc & resides with her." (Compl. at CM/ECF p.6).  Once again, plaintiff lists no causes of action, and states that he seeks "freedom Rights." (Compl. at CM/ECF pp. 7-8).  On the form used for *Bivens* actions, plaintiff claims that the Clerk of Onondaga County accused plaintiff of kidnaping, and he seeks "freedom & Rights." (Compl. at CM/ECF pp.10, 12).  On the form used for the Americans with Disability Act cases, plaintiff states that the Clerk of Marion County Florida, David Ellspermann accused plaintiff of kidnaping, and plaintiff seeks "Rights freedom." (Compl at CM/ECF pp.15, 16).  The rest of the complaint is left blank.

On the form used for Age Discrimination claims, plaintiff alleges that the Clerk of the Court in Pasco County, Florida would not allow plaintiff to file a "Case" on October 15, 2018, even though plaintiff asked five times. (Compl. at CM/ECF p.19).

---

[2] No causes of action are listed on most of the form complaints. (Compl. at CM/ECF pp.3, 7, 11).

Plaintiff states that the Clerk told plaintiff that "they will send notice to go home," even though plaintiff told the Clerk that he lived in New York, not Florida, but "[s]he did not care." (*Id.*)  Plaintiff's prayer for relief states "Housing freedom Protection." (Compl. at CM/ECF p.20).  Plaintiff has filed a Title VII form against the Florida Department of Revenue, claiming that plaintiff paid his child support, but the money was "redirected" to another account "that should not exist."[3] (Compl. at CM/ECF p.23).  The causes of action section of the Title VII form have been left blank, but plaintiff states that he is seeking "freedom rights." (Compl. at CM/ECF pp.23-25).  His prayer for relief states that he seeks "emergency Housing - Transportation, freedom federal protection." (Compl. at CM/ECF p.26).

Finally, plaintiff has sued the "Child Support Enforcement Act of USA," using a section 1983 form. (Compl. at CM/ECF p.27).  In this complaint, plaintiff lists his first cause of action as "Civil Rights Freedom Lost of employment." (Compl. at CM/ECF p.28).  In the section of the complaint naming "defendants," plaintiff has also listed the "State of Florida" and the "State of New York."[4] (Compl. at CM/ECF p.29).  There are no facts, no causes of action, and no prayer for relief included in this complaint.[5]

---

[3] On the page of the Title VII form where it asks the filer to state how the defendant's conduct was "discriminatory," plaintiff has checked "My sex (or sexual harassment)." (Compl. at CM/ECF p.22).

[4] These two defendants do not appear in the caption of the complaint.

[5] It appears that plaintiff has only filed part of the form.

### III.    **The Domestic Relations Exception**

#### A.    **Legal Standards**

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshal v. Marshall*, 547 U.S. 293, 308 (2006).  This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

In *Bukowski v. Spinner*, No. 17-CV-845, 2017 WL 1592578  (E.D.N.Y. Apr. 28, 2017), the District Court dismissed a fee-paid action sua sponte, pursuant to the domestic relations exception.  In *Bukowski*, the plaintiff sought to challenge rulings made in an underlying state court child custody case,[6] naming the Judge, law guardian, and County Attorney, among other defendants. *Id.*  Plaintiff in *Bukowski* criticized the Judge, stated that the law guardian was "not troubled" by the judge's actions, criticized the caseworkers, and claimed that she was subjected her to "unfounded" charges. *Id.* at *1.

In *Tait v. Powell*, 241 F. Supp. 3d 372 (E.D.N.Y. 2017), the court held that a plaintiff may not obtain federal court jurisdiction "merely by rewriting a domestic dispute" as a different type of action. *Id.* at 377.  In *Tait*, the plaintiff raised tort claims,

---

[6] One of the rulings granted sole custody to the father of the child. 2017 WL 1592578, at *1.

breach of contract claims, and international law claims. *Id.* at 376-79. He also asked for a "declaration" that the children were United States citizens. *Id.* at 378. The court stated that "[r]egardless of labels and characterizations, the dispute between Tait and Powell is a family law dispute plain and simple." *Id.* The court dismissed the action without prejudice to plaintiff's "right to seek appropriate relief in a state court of appropriate jurisdiction." *Id.* at 378-79 (citation omitted). *See also Bey v. Barnett*, No. 18-CV-3935, 2018 WL 5830815 (E.D.N.Y. Nov. 7, 2018) (court dismissed action sua sponte because the case essentially involved domestic relations, even though plaintiff raised the "Treaty of Peace and Friendship" and the "Sundry Free Moors Act of 2012." *Id.* at *1.

### B.    Application

Even though plaintiff has filed his complaint on a variety of forms,[7] the complaint and its attachments may be read to challenge the custody and support of his child. He complains that various entities and the mother of the child have accused plaintiff of kidnaping his son, have accused him of failing to make sure that his son was enrolled in school, and have somehow misdirected his support payments. Plaintiff never really states what he wishes this court to do, but the case clearly involves custody of his son and a child support from Florida. To the extent that plaintiff challenges

---

[7] The court believes that plaintiff may have simply collected form complaints from the Northern District of New York and attempted to fit his claims into the forms, even though most of the forms were not appropriate for plaintiff's claims.

custody or a support determination, this court does not have jurisdiction to decide these issues based on the domestic relations exception.

The court's finding that this case is essentially one involving custody and support payments is supported by the exhibits that plaintiff has attached to his complaint. Plaintiff has included a custody order, issued by the Juvenile Division of the Sixth Judicial Circuit Court in Pasco County Florida. (Pl.'s Ex. 2, CM/ECF at 36). The order is dated October 28, 2011 and returns custody of the child to plaintiff, "effective October 25, 2011." (*Id.*) The exhibits also contain a "Written Agreement for Past Due Child Support." (Pl.'s Ex. 3, CM/ECF at 37-40). This agreement is dated October 21, 2013 and is signed by the plaintiff and a representative of the Florida Department of Revenue.[8] (*Id.* CM/ECF at 39). The agreement states that the custodial parent was the child's mother at that time. (*Id.* at 37) The purpose of the document appears to be setting up a payment schedule, and the document states that the support payments were to be made to the State of Florida Disbursement Unit, not to the custodial parent.[9] (*Id.* at

---

[8] CM/ECF p.38 is a copy of p.37.

[9] The agreement also warns the plaintiff that if he does not comply with the payment schedule, the Department of Revenue will continue the "enforcement action" listed in paragraph one of the agreement. (Pl.'s Ex. 3, CM/ECF at 37. 40). In this case, the "enforcement action" listed in the first paragraph was "suspend or deny the obligor's drivers license/motor vehicle registration." (*Id.* at 37). The plaintiff's exhibits include the "Notice of Intent to Suspend Driver's License and Motor Vehicle Registration(s) for Nonpayment of Support." (*Id.* CM/ECF at 41). Plaintiff includes other notices that he received from Florida regarding his driver's license. (Pl.'s Exs. 9, 11, CM/ECF at 63, 64) (Exhibit 10 is placed out of order at CM/ECF 82-84.) One notice is dated February 20, 2018 and states that the Child Support Program had notified the Department of Motor Vehicles in Florida to reinstate plaintiff's drivers license. (Pl.'s Ex. 9, CM/ECF at 63). However, the next exhibit is dated July 10, 2018 and notifies plaintiff that his drivers license would be suspended if he failed to pay his child support. (Pl.'s Ex. 11, CM/ECF at 64).

8

37, 39).

Plaintiff has also attached documents entitled "Family Law Case History"[10] from Pasco County, which also reflect past due child support, and a letter from the Florida Department of Revenue Child Support Enforcement Program, dated August 7, 2018, notifying plaintiff that if his case for past-due support is submitted to the IRS, any tax refunds or other federal payments that plaintiff is due would be "intercepted either in whole or in part" to pay the past-due amounts.[11] (*Id.* at CM/ECF at 42-45, (letter at 43)). Another document, which appears to be part of a custody order, states certain "minor children" will "remain" in plaintiff's care, custody, and control. (*Id.* CM/ECF at 51-52). In 2012, it appears that "protective services" were terminated for plaintiff's son, and he would "remain in the plaintiff's custody. (Pl.'s Ex. 4, CM/ECF at 53-56). It also appears that the child's mother was incarcerated at the time. (*Id.* CM/ECF at 54-55). On July 20, 2018, plaintiff received a letter from the Child Support Program, notifying plaintiff that "the other parent" asked for help in getting "child support and/or health insurance for the child(ren)." (Pl.'s Ex. 12, CM/ECF at 65). By August 21, 2018,

_____

[10] Additional Case History documents appear later as Exhibits 5 and 6. (Pl.'s Exs. 5, 6, CM/ECF at 57, 58-59). Plaintiff may be attempting to show the court that he has been paying child support. However, these documents are meaningless, and do not support plaintiff's conclusory claims. The court also notes that it appears that there are two different women, listed as "petitioners" in these documents. (*Compare* Compl. CM/ECF p.42 *with* p.57). One woman is listed as Angela Bareford, one of the defendants in this case (CM/ECF p.57), while the other woman is listed as Mary St. Germain (CM/ECF p.42).

[11] In this letter, plaintiff was also told that one of the other consequences would be an inability to obtain a passport. (CM/ECF at 43).

plaintiff was sent another driver's license suspension notice. (Pl.'s Ex. 13, CM/ECF at 66, 67).

In this Northern District of New York action, plaintiff has added some conclusory claims that he has been accused of kidnaping his son and keeping him out of school by defendants located in the Northern District of New York. As exhibits, plaintiff has included a "Notice of Request for Registration of an Out-of-State Child Custody or Visitation Order" filed by the child's mother in the Onondaga County Family Court, together with plaintiff's "objection" to the registration of the order. (CM/ECF at 70-71). Plaintiff's objection to the order's registration is dated November 8, 2018. It is unclear whether plaintiff actually completed the objections because the "order" consists of a form, and plaintiff has failed to complete the sentences which would support his objections to the registration.[12]

Plaintiff has included a letter, dated November 27, 2018, from the Onondaga County Department of Children and Family Services ("CDCFS"), notifying plaintiff that the Onondaga Family Court requested the CDCFS to conduct an investigation to "ensure the safety of [plaintiff's] son." (*Id.*) Apparently, when the caseworker called the plaintiff, he hung up on her. The letter also states that the school district had

---

[12] The form asks the filer to complete the following: "In support of this objection, I allege the following:" and there are the beginnings of three standard objections listed underneath, including "The court that issued the order did not have jurisdiction, because . . . ." (CM/ECF at 71). The filer is required to fill in the reason why the court that issued the order did not have jurisdiction. However, plaintiff's form is blank, and the sentence ends with "because."

informed a representative of CDCFS that plaintiff's child was not enrolled in school, that it was "my hope that [the] school district made a mistake," and that plaintiff's "special needs" son was "indeed enrolled in a NYS approved educational program." (*Id.*) Finally, the letter requested a response from plaintiff by December 3, 2018 or "a child protective report will be called in with the state [sic] of New York and a full investigation will commence." (*Id.*)

Plaintiff has included a "Final Judgment of Paternity," issued by the court in Florida, after plaintiff failed to appear for a hearing on March 7, 2018. (CM/ECF at 74-81). This judgment is dated March 19, 2018, finds that plaintiff is the father of the child, and outlines the parental responsibilities and shared custody of both mother and father. Among other requirements, the court notes that "[a]s the parties, live in two different states, New York and the State of Florida, the minor child . . . is scheduled to reside the majority of the time with the Mother." (CM/ECF at 80). In addition, any "relocation" of the child "is subject to and must be sought in compliance [with Florida law]. (*Id.*)

Plaintiff has also attached a 30-day eviction notice, dated November 28, 2018, addressed to plaintiff and another individual for the property where plaintiff apparently resides.[13] (CM/ECF at 87). Finally, plaintiff has attached the child's school records, showing that he is doing well and that he was enrolled in school from 1/27/15 to

---

[13] The other individual has a different address listed on the letter.

6/30/2016 and again from 7/1/2017 to "Current." (CM/ECF at 93). Two addresses are listed as the child's residences.[14] (*Id.*)

In order to determine what issues plaintiff might be attempting to raise, the court has examined both the complaint and the exhibits attached. Clearly, based on the vague complaint(s) and the documents reviewed above, the plaintiff is attempting to challenge a custody or support determination, or both. This court has interpreted plaintiff's exhibits as an attempt to show that he has not "kidnaped" his son and that, contrary to the preliminary investigation by the caseworker at CDCFS, plaintiff's son has been enrolled in school. These allegations may not be the subject of a federal court action, even assuming that the court could exercise personal jurisdiction over the Florida defendants because, among other things, custody and support claims are within the domestic relations exception to federal court jurisdiction. In addition, plaintiff's allegations of wrongdoing and requests for relief are so vague that it is impossible to determine what plaintiff is asking this court to do. Thus, this court must recommend dismissal of the action to the extent that it can be read to challenge a custody or support determination.[15]

Plaintiff has also named the child's mother, who lives in Florida, as a defendant,

---

[14] The two residences are the same as the addresses listed in the eviction notice, only one of which was the subject of the eviction proceeding.

[15] There are instances, as discussed below, in which a challenge to the enforcement of a support order may not be subject to dismissal based on the domestic relations exception to federal court jurisdiction, but which may be dismissed for alternative reasons. Because the complaints are so vague, this court has attempted to discuss the possible bases for the plaintiff's action.

stating that she accused plaintiff of kidnaping. (Compl. at CM/ECF pp.5-8). Plaintiff

sues defendant Bareford on a form used for 42 U.S.C. § 1983 actions. To state a claim

under section 1983, the plaintiff must allege both that the defendant has violated

plaintiff's rights under either the Constitution or laws of the United States and that the

defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F. Supp. 2d 217,

223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official

capacity, "clothed with the authority of state law," or acts under "pretense" of law by

purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12

Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v.

Atkins*, 487 U.S. 42, 49 (1988)). The requirement that the defendant acted under "color

of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at

*2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315

(1981)).

Private conduct is simply beyond the reach of section 1983 "'no matter how

discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut.

Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). A private party may act under color of

state law if he or she engages in conduct that constitutes willful participation in joint

activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d

255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be

fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308,

312 (2d Cir. 2003) (citations omitted).

The child's mother is a private individual who does not act under color of state

law. Plaintiff states that she accused plaintiff of kidnaping, but there is no allegation

that she conspired with any state actor to do so or that she acted under color of state law

in any other way. Thus, any section 1983 claim against defendant Bareford may be

dismissed. Plaintiff cites no other basis, and the court can discern none, for federal

court jurisdiction over a law suit by plaintiff against the child's mother, who appears to

reside in Florida.

## IV.    <u>Florida Individual Defendants' Personal Jurisdiction</u>

### A.    **Legal Standards**

In a federal question case, where a defendant resides outside the forum state, the

court applies the forum state's personal jurisdiction rules if the federal statute does not

specifically provide for national service of process. *PDK Labs, Inc. v. Friedlander*, 103

F.3d 1105, 1108 (2d Cir. 1997). In New York, in order to exercise general personal

jurisdiction over a defendant, that defendant must be domiciled in New York, must be

served with process in New York, or have otherwise consented to the New York court's

jurisdiction. *Kidney v. Webster*, No. 3:16-CV-831, 2017 WL 758508, at *5 (N.D.N.Y.

Feb. 27, 2017) (discussing personal jurisdiction under New York law).

Long arm jurisdiction requires that the defendant transact business in New York,

or contract anywhere to supply goods or services in New York; commit a tortious act outside the state, causing injury to a person in the state, if the defendant regularly does or solicits business or engages in any other persistent course of conduct or derives substantial revenue from goods used or services rendered in the state, or expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. *Id.* (quoting N.Y. C.P.L.R. § 302(a)). Thus, "jurisdiction is proper under section 302(a)(1) when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business." *Id.* (quoting *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006) (internal quotations omitted)).

### B.    Application

In this case, plaintiff has named David Ellspermann, the Clerk of Marion County, Florida; the Pasco County Clerk of Court in Florida; and the Florida Department of Revenue.  None of these defendants are alleged to have done business in the Northern District of New York, or in New York State in general.  Even assuming that one of the Florida Clerks committed a tort in Florida that "caused injury" to plaintiff in New York, that defendant does not meet the rest of the jurisdictional test, requiring that he or she regularly do business in New York or derive substantial revenue from goods used or services rendered in the state, or expect or should reasonably expect the act to have

consequences in the state and derive substantial revenue from interstate or international commerce.  The Florida Clerk defendants have not engaged in any conduct in New York that would allow this court to exercise personal jurisdiction over them individually.

In any event, plaintiff has already attempted to bring a similar action in the United States Court for the Middle District of Florida, and he has attached the Florida complaint as an exhibit in this action. (Compl. Exh. 1, CM/ECF at 31-35).  In the Florida action, plaintiff sued the State of Florida "CSD"[16] and the Clerk of Pasco County. *Junod v. State of Florida*, 8:18-CV-2574 (VMC/AEP) (M.D. Fla.)  In the Florida action, plaintiff alleged that he complied with Florida Child Support, and that he was current in his payments, but "they" took his payments and diverted them, "eras[ing] $20,000.00 of child support." (Pl.'s Ex. 1, CM/ECF at 34).  This is very similar to the claim plaintiff makes in this action against the Florida Department of Revenue, where he alleges that he paid his child support, but it was "redirected" to another account "that should not exist." (Compl. at CM/ECF p.23).

On October 24, 2018, the Honorable Virginia Hernandez Covington, United States District Court Judge in the Middle District of Florida dismissed plaintiff's case for lack of jurisdiction based upon the domestic relations exception. *Junod v. State of Florida*, 8:18-CV-2574 (VMC/AEP) (M.D. Fla. Oct. 24, 2018) (Dkt. No. 4 in 18-CV-

---

[16] According to plaintiff's Florida complaint, CSD stands for Child Support Disbursement. (Pl.'s Ex. 1, CM/ECF at 32).

2574). As stated above, this court agrees that any claim that plaintiff may be making in this action, challenging a custody or support determination in Florida is subject to dismissal for lack of jurisdiction and subject to dismissal based upon Judge Covington's decision.[17]

## V.    Rule 8

### A.    Legal Standards

Rule 8(a) of the Federal Rules of Civil Procedure requires the complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Whitfield v. Lopez*, No. 15-CV-4827, 2015 WL 6128866, at *3 (E.D.N.Y. Oct. 16, 2015) (citing inter alia Fed. R. Civ. P. 8(a)(2)). The purpose of Rule 8 is to give fair

---

[17] In addition, to the extent that plaintiff disagreed with Judge Covington's determination, he should have appealed her decision dismissing the case for lack of jurisdiction. Plaintiff cannot challenge that determination by bringing the same action in this court. Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Generally, a dismissal for lack of subject matter jurisdiction is not on the merits and is not accorded res juricata effect. *George v. Storage America*, No. 13 Civ. 9226, 2014 WL 1492484, at *3 (S.D.N.Y. Mar. 6, 2014) (citations omitted), Rep't-Rec. *adopted*, 2014 WL 1494116 (S.D.N.Y. Apr. 16, 2014). Thus, a dismissal for lack of subject matter jurisdiction may not bar a determination on the **merits** of the claim at a later date if the jurisdictional defects have been cured, and may not bar a proper state court action in the case of a dismissal based on the domestic relations exception. *Id.* However, a finding of lack of subject matter jurisdiction is res judicata as to that particular issue in a subsequent action between the parties. *Id.* (citing *Barclay's Ice Cream Co. v. Local No. 757 of Ice Cream Drivers & Employers Union*, No. 79 Civ. 1611, 1979 WL 1710, at *2 (S.D.N.Y. Sept. 7, 1979)). A prior dismissal based on lack of subject matter jurisdiction is a "final decision regarding the lack of the district court's power to act on those claims." *Id.* (quoting *Wagstaff v. United States Dep't of Education*, 366 F. App'x 564, 565-66 (5th Cir. 2010) (upholding dismissal of complaint on res judicata grounds where prior action involving identical named parties and same cause of action was dismissed for lack of subject matter jurisdiction)). This finding would apply only to those Florida defendants who were named in the Florida action. Res judicata would not apply to the New York State defendants as they were not parties to the Florida action. This court has made a separate finding that to the extent that plaintiff is challenging custody in the New York, the action is barred by the domestic relations exception.

notice of the claim being asserted so as to permit the adverse part the opportunity to file an answer and prepare a defense. *Hudson v. Artuz*, No. 98 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)).

### B.    Application

The claims against all the Clerks fail under Rule 8 because, other than the claim regarding plaintiff attempting to file a lawsuit, no defendant Clerk in this case would understand what wrongdoing plaintiff was trying to allege. Such a lack of specificity would make it impossible for the clerks to assert a defense. To the extent that plaintiff is alleging that the Pasco County Clerk prevented him from filing an action or denied him access to courts, this court has no personal jurisdiction over the Pasco County Clerk in Florida, who plaintiff has not named. Plaintiff has also failed to describe the details of the Clerk's alleged action, other than to say that he asked to file the case five times, and the Clerk did not care that plaintiff lived in New York. Plaintiff does not ask for damages, and plaintiff does not indicate that he still wishes to file the action in Florida that the Clerk allegedly prevented him from filing.

It is completely unclear what any of the Clerks named (or unnamed) as defendants could do for the plaintiff at this time.[18]  Finally, even if plaintiff were

---

[18] In addition, mandamus relief is unavailable because federal courts have no "'general power to compel action by state officials.'" *Bey v. Barnett*, *supra* 2018 WL 5830815, at *1 (quoting *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988).

seeking damages, plaintiff would have to show that the individual defendant was "personally responsible" for whatever constitutional violation the plaintiff was trying to assert.[19]   Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

The court has no personal jurisdiction over the Clerks of Court in Florida, where plaintiff claims that his child support was diverted and where plaintiff claims that he was prevented from filing an action, even though he asked five times.   In this case, plaintiff has also named the Clerk of the Court in Onondaga County.   The only facts that plaintiff has alleged against the Clerk is that plaintiff was "accused of kidnaping." (Compl. at CM/ECF p.10).   It is unclear how the Clerk of the Court would or could have accused the plaintiff of kidnaping.   Plaintiff has not included a date or any documents that would support such an allegation, nor has he named a "clerk" that was responsible, nor has plaintiff asked for any particular form of relief.[20]   Although the

---

[19] Plaintiff has used the *Bivens* form for his complaint against the Clerk in Onondaga County. (Compl. at CM/ECF pp.9-12).   *Bivens* actions assert constitutional claims against federal defendants. *Bivens, supra*.   Section 1983 actions assert constitutional claims against individuals who act under color of state law, such as the Clerk of Onondaga County.   The court will simply assume that plaintiff has brought the appropriate action, even if he fails to state a claim.

[20] The letter from Onondaga County CPS discusses the child's enrollment in school and does not mention kidnaping or any custody issues. (Compl. at CM/ECF p.86).   The only exhibit that references the child's "removal" from Florida without court approval or consent of the custodial parent is the Final Judgment of Paternity signed by the state court Circuit Judge in Florida on March 19, 2018, after plaintiff failed to appear for a hearing. (Compl. at CM/ECF p.76).   Although this reference was merely a notation that "the minor child has lived in New York since May of 2017 after Respondent/ Father removed the minor child from the state of Florida without agreement of the parties or court permission." (*Id.*)   However, there is no "accusation," and the order only establishes a "plan" for future

19

claims against the clerk are "short," they certainly do not give fair notice of the claim

being asserted so as to permit the clerk to file a defense, even assuming that plaintiff

named a particular individual.  In addition, to the extent that the "kidnaping" issue

could be interpreted as a challenge to custody, such an interpretation would be subject

to dismissal under the domestic relations exception as discussed above.

## VI.    **Child Support Enforcement Act**

### A.    **Legal Standards**

The Child Support Enforcement Act ("CSEA"), 42 U.S.C. §§ 651-669 is a

lengthy statute which was promulgated to assist in the collection of child support and

the establishment of paternity.[21]

### B.    **Application**

Plaintiff's complaint names the CSEA as a defendant in the caption of a section

1983 form-complaint and as the first defendant, but then lists the State of Florida and

the State of New York as additional defendants. (Compl. CM/ECF at 27, 29).  The court

will assume that the plaintiff is not naming the statute as a defendant, but is attempting

to sue the states of Florida and New York under the CSEA.[22]  However, plaintiff does

not specify which section or sections of the CSEA he claims that either state violated or

---

parenting.

[21] This statute is part of the Social Security Act, Part D of Title IV.

[22] Pro se pleadings are read to raise the strongest arguments that they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

how the statute was violated.

In his Florida complaint, plaintiff seemed to allege that his child support payments were somehow diverted and "They" erased $20,000.00 of child support. (Compl. Ex. 1, CM/ECF p.34).  In this complaint, he states that he complied with his child support, but it gets "redirected to other [sic] account that should not exist." (Compl. at CM/ECF 23).  Plaintiff does not explain anything further, and it appears that he is referring to Florida defendants, over whom this court has no personal jurisdiction and who were parties to the Florida action that was dismissed by Judge Covington.[23] However, to the extent that plaintiff is not challenging the support determination, but is challenging the method by which the money is collected, the domestic relations exception may not apply, but in any event, this court must recommend dismissing any claims brought under the CSEA.

## VII.  Eleventh Amendment

### A.    Legal Standards

The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

---

[23] When plaintiff made a very similar claim in his Florida action, the court refused to assume jurisdiction because of the domestic relations exception.  It is unclear whether that exception would have applied to a claim in which plaintiff did not allege that the support decision was invalid, but where he claimed that the state was improperly withholding the funds. *See Sykes v. Bank of America*, 723 F.3d 399, 404-405 (2d Cir. 2013) (finding that the domestic relations exception does not apply to a challenge to the enforcement of the support order, that SSI benefits are not subject to legal process under section 659(a), and discussing the purpose of the CSEA).

An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state). Thus, plaintiffs may not sue a state entity under section 1983. *Id.*

### B.    Application

Plaintiff has named the Florida Department of Revenue and has used a form for Title VII actions. Clearly, plaintiff is not suing for employment discrimination under Title VII. Plaintiff alleges that he complied with his child support payments but "it gets redirected to [another] account that should not exist." (Compl. at CM/ECF p.23). However, the department is an arm of the state government and may not be sued in federal court. Even if this court were in Florida, plaintiff would not be able to sue the Florida Department of Revenue.[24]

## VIII. Opportunity to Amend

### A.    Legal Standards

Generally, before the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to

---

[24] Plaintiff has named "CPS of Onondaga County." (Compl. at CM/ECF p.1). Plaintiff may not sue the entity. However, if plaintiff had stated a claim, he could have sued Onondaga County under a theory of municipal liability. However, plaintiff did not state any kind of claim and CPS may also be dismissed as a defendant.

re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.    Application

Although this court will recommend dismissing the action without prejudice to plaintiff filing an appropriate action, challenging custody or support payments in the appropriate state court, he should not be afforded the opportunity to amend his claims in this court against any Florida defendants or against the State of New York or the State of Florida. No amendment that plaintiff could propose would allow him to sue the respective states or entities, including "CPS of Onondaga County."

## VIII. <u>Appointment of Counsel</u>

### A.    Legal Standards

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. If so, the Court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

### B.    Application

Plaintiff has moved for appointment of counsel, using a form provided by the court. (Dkt. No. 3). In his motion, plaintiff states only that he does not work and is a "full time care giver" to his autistic son. (*Id.*) Plaintiff has not completed the portion of the form motion which asks the movant to state the attorneys that he contacted "in an effort to obtain counsel." (*Id.*) As stated above, plaintiff's financial status is only one

24

factor in the analysis, and the court could deny plaintiff's motion because it appears that he has not attempted to find counsel on his own. *See Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge*, 802 F.2d at 61) (prior to evaluating a request for appointment of counsel, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms).

However, this court has also examined the other factors in the counsel determination and finds that, for the reasons stated above, plaintiff's complaint does not have substance and cannot meet the first requirement for the appointment of counsel. Therefore, this court will deny plaintiff's motion for appointment of counsel.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED IN ITS ENTIRETY AS AGAINST ALL DEFENDANTS WITHOUT PREJUDICE AS TO PLAINTIFF FILING SUIT IN THE APPROPRIATE STATE COURT TO CHALLENGE HIS CUSTODY DETERMINATION AND ANY CHALLENGE TO HIS SUPPORT PAYMENTS, BUT WITHOUT THE OPPORTUNITY TO AMEND IN THIS COURT**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE AS AGAINST DAVID ELLSPERMANN (MARION COUNTY FLORIDA CLERK); THE PASCO COUNTY FLORIDA CLERK;**

THE ONONDAGA COUNTY CLERK; THE STATE OF NEW YORK; THE

STATE OF FLORIDA; CPS OF ONONDAGA COUNTY (AS AN ENTITY); THE

FLORIDA DEPARTMENT OF REVENUE; the CHILD SUPPORT

ENFORCEMENT ACT; and ANY 42 U.S.C. § 1983 CLAIMS AGAINST

ANGELA BAREFORD, and it is

ORDERED, that plaintiff's motion for appointment of counsel (Dkt. No. 3) is

DENIED, and it is

ORDERED, that the Clerk serve a copy of this Order and Report-

Recommendation on the plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 2, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge

26